**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(BROWARD DIVISION)**
**www.flsb.uscourts.gov**

In re:                                                                 Case No.  19-10998-JKO

JO ANN HARMON                                              Chapter  7

       Debtor(s).
_____/

**TRUSTEE'S *EX PARTE* MOTION (A) TO EMPLOY REAL ESTATE BROKER;**
**(B) TO ENTER INTO LISTING AGREEMENT; (C) FOR AUTHORIZATION**
**TO ENTER INTO SHORT SALE NEGOTIATION PROCESS; AND**
**(D) TO ENTER INTO CONTRACT FOR SALE OF REAL PROPERTY**

Chapter 7 Trustee, Kenneth A. Welt (the "Trustee"), pursuant to 11 U.S.C. §§ 327(a) and 363, Fed. R. Bankr. P. 2014 and Local Rule 9013-1(C)(4), requests the Court enter an order: (a) approving the retention of Alejandro J. Morad and Charles Rutenberg Realty, LLC (collectively, the "Broker"), as Real Estate Broker for the Trustee, to provide certain real estate brokerage services in this case, as set forth below; (b) authorizing the Trustee to enter into a listing agreement with the Broker; (c) authorizing the Trustee to enter into a short sale negotiation process with regard to the real property described below; and (d) authorizing the Trustee to enter into a contract for the sale of real property, subject to further Court approval, and states:

1. On 1/24/2019, JO ANN HARMON (the "Debtor(s)") filed a voluntary petition for bankruptcy relief under Chapter 7 of the United States Code (the "Bankruptcy Code").

2. The Debtor(s), JO ANN HARMON, is the sole fee simple owner of an interest in real property located in BROWARD County, Florida, which is identified as having the property address of: 681 S HOLLYBROOK DRIVE, APT 107, PEMBROKE PINES, FL 33025 (Parcel ID: 5141 17 AA 1270), and is legally described as follows:

**HOLLYBROOK GOLF & TENNIS CLUB CONDO UNIT 27-107**

(hereinafter referred to as the "Property").

3. The Property was not claimed as exempt and is therefore property of the bankruptcy estate pursuant to 11 U.S.C. § 541. The Debtor scheduled secured claim(s) against the Property in favor of a secured lender (the "Secured Lender"), in an amount greater than the scheduled value of the Property.

4. The Trustee believes that the Property may be sold for the benefit of the creditors. Upon information and belief, the secured lender has procedures in place for a short sale and such a short sale can be done with the secured lender's consent. Any short sale would be contingent on a carve-out for the benefit of the bankruptcy estate.

5. As such, it is necessary for the Trustee to employ a licensed real estate broker with the requisite real estate brokerage experience to handle the Trustee's marketing efforts. The Trustee has conferred with the Broker, who has the ability and experience to represent the Trustee.

6. The Trustee believes that it is in the best interest of the estate to market and sell the Property and that the Broker is qualified to sell the Property for the benefit of the estate.

7. The professional services to be rendered are summarized as follows:

   a. Analyze and determine the market value of the Property;

   b. Advertise and show the Property to potential buyers;

   c. Assist with the negotiation of a short sale price and carve-out for the benefit of the bankruptcy estate; and

   d. Sell and assist with the closing of the sale of the Property.

8. The Broker is a disinterested party, who does not hold any adverse interest to the estate. *See* Exhibit "A" – Affidavit of Disinterestedness.

9. Attached to this Application as Exhibit "B" is the listing agreement entered into between the Trustee and the Broker, subject to the Court's approval, the principal terms of which are that Trustee and the Broker have agreed that the Broker would be paid at closing a 6% commission fee, with the Broker agreeing to share such commission with any cooperating buyer's

broker, if applicable. .

10. The Trustee submits that a 6% commission rate is standard within the real estate industry.

11. The Trustee also requests authorization to reimburse the Realtor in a maximum amount not to exceed $500.00, for any approved, out-of-pocket costs incurred by Broker, associated with the maintenance and upkeep of the Property in connection with a potential sale, upon the availability of funds from the estate, without the need for further Order.

12. Furthermore, in an abundance of caution and in order to comply with any and all requirements of the Secured Lender, the Trustee requests that the Court provide him with specific authorization to enter into a short sale negotiation process with the Secured Lender, with regard to the Property.

13. The Trustee further requests that the Court authorize the Trustee to enter into a contract for the sale of the Property, which will be contingent upon further Court order. The Secured Lender shall be permitted to review the proposed HUD-1 prior to closing and the short sale will be subject to the Secured Lender's consent to the negotiated terms and conditions.

14. That is, upon reaching an agreement with the Secured Lender on the specific terms of a short sale and carve-out for the bankruptcy estate, and upon procuring a contract for the sale of the Property, the Trustee will file a further motion, pursuant to 11 U.S.C. § 363 and Fed. R. Bank. P. 6004, for the approval of the sale and the payment of the Broker's (and any participating broker's) commission(s).

15. Approving the process set forth above would be in the best interest of the bankruptcy estate and would allow the Trustee to liquidate and monetize the Property for the benefit of unsecured creditors.

WHEREFORE, the Trustee respectfully requests the Court enter an Order: (a) approving the retention of the Broker as Real Estate Broker for the Trustee, to provide the real estate

brokerage services identified above; (b) authorizing the Trustee to enter into the listing agreement with the Broker attached as Exhibit "B"; (c) authorizing the Trustee to reimburse the Realtor in the maximum amount, not to exceed $500.00, upon the availability of funds from the estate, without the need for further Order, for any approved, out-of-pocket costs incurred by the Broker, associated with maintenance and upkeep of the Property in connection with a potential sale; (d) authorizing the Trustee to enter into a short sale negotiation process with the Secured Lender with regard to the Property; (e) authorizing the Trustee to enter into a contract for the sale of the Property, subject to further Court approval; and (f) granting such other and further relief as the Court deems just and proper.

Dated: June 6, 2019

      LEIDERMAN SHELOMITH
      ALEXANDER + SOMODEVILLA, PLLC
      Proposed Attorneys for Kenneth A. Welt
      2699 Stirling Rd, C401
      Fort Lauderdale, FL 33312
      Telephone: (954) 920-5355
      Facsimile: (954) 920-5371

      By:_____/s/_____
         Zach B. Shelomith
         Florida Bar No. 0122548
         zbs@lsaslaw.com

**CERTIFICATE OF SERVICE**

     I hereby certify that a true and correct copy of the foregoing was served on June 6, 2019 to all parties on the list to receive e-mail notice/service for this case, via the Notice of Electronic Filing (which is incorporated herein by reference), and via U.S. Mail to Jo Ann Harmon, 39 Talavera Ct, St. Augustine, FL 32086 and Synchrony Bank, PRA Receivables Management, LLC, PO Box 41021, Norfolk, VA 23541.

      By:_____/s/_____
         Zach B. Shelomith

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
(BROWARD DIVISION)
www.flsb.uscourts.gov

In re:                                               Case No. 19-10998-JKO

JO ANN HARMON                                        Chapter 7

      Debtor(s).
_____/

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR AUTHORIZATION TO EMPLOY CHARLES RUTENBERG REALTY, LLC AND ALEJANDRO J. MORAD AS REAL ESTATE AGENT

STATE OF FLORIDA    )
                                )
COUNTY OF BROWARD  )

Alejandro J Morad, being duly sworn, hereby states:

1. I am a real estate agent duly licensed by the State of Florida.

2. I am an agent of Charles Rutenberg Realty, LLC a Florida Limited Liability Corporation, with the corporate offices located at 2201 W Prospect Road, Suite 200 (hereinafter, "Charles Rutenberg Realty").

3. I am familiar with the *Application for Employment* of *Charles Rutenberg Realty, LLC* filed by the Trustee, ("Application") and the property described therein.

4. I believe that I am experienced and qualified to represent the Trustee in connection with the marketing and sale of the real property located at: **681 S HOLLYBROOK DRIVE, APT 107, PEMBROKE PINES, FL 33025(the "Property").**

5. Charles Rutenberg Realty, LLC has agreed to accept employment pursuant to the terms and conditions set forth in the Application and the proposed commission structure. Based upon my experience and knowledge of the real estate market, l believe that the commission structure proposed to be paid to Charles Rutenberg Realty, LLC does not exceed customary commissions in the applicable geographical area and are reasonable for the type of employment proposed.

Exhibit "A"

6. Neither I nor any member of Charles Rutenberg Realty, LLC hold or represent any interest adverse to the estate with respect to the matters for which we are to be employed and we are disinterested persons within the meaning of II U.S.C. § I0I(14), as required by § 327(a).

7. To the best of my information and belief, neither I nor the other members of this firm have any connection with the Debtor, its creditors, or any other party in interest or their respective attorneys or accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee, as required by Rule 2014 of the Federal Rules of Bankruptcy procedure except as set forth below.

8. That I own companies which specialize in Information Technology Services (IT) which has done and continues to perform services for Kenneth A Welt, Trustee as well as other Trustees in the Southern and Middle Districts. I am the owner of Britenets Services Inc., which provides IT Services.

9. I represent no interest adverse to the Debtor or its estate in the matters upon which I am to be engaged.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Alejandro J. Morad
Charles Rutenberg Realty, LLC

The foregoing instrument was sworn and subscribed before me this 5th day of June, 2019 by Alejandro J. Morad who ___ provided _____ as identification or ✓ is personally known to me.

My Commission Expires:

Notary Public State of Florida
Laura Byron
My Commission GG 213741
Expires 05/02/2022

_____
Notary Public, State of Florida

Exhibit "A"

# Exclusive Right of Sale Listing Agreement



1  This Exclusive Right of Sale Listing Agreement ("Agreement") is between
2*  Trustee Kenneth A. Welt for the Estate of Jo Ann Harmon ("**Seller**")
3*  and Alejandro J Morad, Realtor for Charles Rutenberg Realty, LLC ("**Broker**").

4   **1. Authority to Sell Property: Seller** gives **Broker** the EXCLUSIVE RIGHT TO SELL the real and personal
5   property (collectively "Property") described below, at the price and terms described below, beginning
6*  05-30-2019 and terminating at 11:59 p.m. on 11-30-2019 ("Termination Date"). Upon
7   full execution of a contract for sale and purchase of the Property, all rights and obligations of this Agreement will
8   automatically extend through the date of the actual closing of the sales contract. **Seller** and **Broker** acknowledge
9   that this Agreement does not guarantee a sale. This Property will be offered to any person without regard to race,
10  color, religion, sex, handicap, familial status, national origin, or any other factor protected by federal, state, or local
11  law. **Seller** certifies and represents that she/he/it is legally entitled to convey the Property and all improvements.

12  **2. Description of Property:**
13*  (a) Street Address: 681 S HOLLYBROOK DRIVE, APT 107, PEMBROKE PINES, FL 33025
14
15*  Legal Description: HOLLYBROOK GOLF & TENNIS CLUB CONDO UNIT 27-107
16*  ☐ See Attachment

17*  (b) Personal Property, including appliances: 
18*  ☐ See Attachment

19  (c) Occupancy:
20*  Property ☐ is ☐ is not currently occupied by a tenant. If occupied, the lease term expires _____.

21  **3. Price and Terms:** The property is offered for sale on the following terms or on other terms acceptable to **Seller**:
22*  (a) Price: $ TBD
23*  ~~(b) Financing Terms: ☐ Cash ☐ Conventional ☐ VA ☐ FHA ☐ Other (specify)~~
24*  ~~☐ Seller Financing: Seller will hold a purchase money mortgage in the amount of $~~
25*  ~~with the following terms:~~
26*  ~~☐ Assumption of Existing Mortgage: Buyer may assume existing mortgage for $_____ plus~~
27*  ~~an assumption fee of $_____. The mortgage is for a term of ___ years beginning in~~
28*  ~~____, at an interest rate of ___% ☐ fixed ☐ variable (describe)~~
29** ~~Lender approval of assumption ☐ is required ☐ is not required ☐ unknown. Notice to Seller: (1) You may~~
30  ~~remain liable for an assumed mortgage for a number of years after the Property is sold. Check with your~~
31  ~~lender to determine the extent of your liability. Seller will ensure that all mortgage payments and required~~
32  ~~escrow deposits are current at the time of closing and will convey the escrow deposit to the buyer at closing.~~
33  ~~(2) Extensive regulations affect Seller financed transactions. It is beyond the scope of a real estate licensee's~~
34  ~~authority to determine whether the terms of your Seller financing agreement comply with all applicable laws or~~
35  ~~whether you must be registered and/or licensed as a loan originator before offering Seller financing. You are~~
36  ~~advised to consult with a legal or mortgage professional to make this determination.~~
37*  ~~(c) Seller Expenses: Seller will pay mortgage discount or other closing costs not to exceed ___% of the~~
38  ~~purchase price and any other expenses Seller agrees to pay in connection with a transaction.~~

39  **4. Broker Obligations: Broker** agrees to make diligent and continued efforts to sell the Property until a sales
40  contract is pending on the Property.

41  **5. Multiple Listing Service:** Placing the Property in a multiple listing service (the "MLS") is beneficial to **Seller**
42  because the Property will be exposed to a large number of potential buyers. As a MLS participant, **Broker** is
43  obligated to timely deliver this listing to the MLS. This listing will be promptly published in the MLS unless **Seller**
44  directs **Broker** otherwise in writing. **Seller** authorizes **Broker** to report to the MLS this listing information and price,
45  terms, and financing information on any resulting sale for use by authorized Board / Association members and
46  MLS participants and subscribers unless **Seller** directs **Broker** otherwise in writing.

Seller (_____) (_____) and Broker/Sales Associate (_____) (_____) acknowledge receipt of a copy of this page, which is Page 1 of 4.
ERS-16tb   Rev 03/14                                                                © 2014 Florida Association of Realtors®

This software is licensed to [Cynthia Benchick - Charles Rutenberg Realty LLC] www.transactiondesk.com.

Exhibit "B"

6. **Broker Authority: Seller** authorizes **Broker** to:
   (a) Advertise the Property as **Broker** deems advisable including advertising the Property on the Internet unless limited in (6)(a)(i) or (6)(a)(ii) below.
   (**Seller opt-out**) (**Check one if applicable**)
   (i) ☐ Display the Property on the Internet ~~except the street address~~.
   (ii) ☐ **Seller** does not authorize **Broker** to display the Property on the Internet.
   **Seller** understands and acknowledges that if **Seller** selects option (ii), consumers who search for listings on the Internet will not see information about the Property in response to their search.
   _____/_____ Initials of Seller
   (b) Place appropriate transaction signs on the Property, including "For Sale" signs and "Sold" signs (once **Seller** signs a sales contract) and use **Seller's** name in connection with marketing or advertising the Property.
   (c) Obtain information relating to the present mortgage(s) on the Property.
   (d) Provide objective comparative market analysis information to potential buyers.
   ~~(e) (**Check if applicable**) ☐ Use a lock box system to show and access the Property. A lock box does not ensure the Property's security. **Seller** is advised to secure or remove valuables. **Seller** agrees that the lock box is for **Seller's** benefit and releases **Broker**, persons working through **Broker**, and **Broker's** local Realtor Board / Association from all liability and responsibility in connection with any damage or loss that occurs.~~
   ~~☐ Withhold verbal offers. ☐ Withhold all offers once **Seller** accepts a sales contract for the Property.~~
   (f) Act as a transaction broker.
   (g) **Virtual Office Websites:** Some real estate brokerages offer real estate brokerage services online. These websites are referred to as Virtual Office Websites ("VOWs"). An automated estimate of market value or reviews and comments about a property may be displayed in conjunction with a property on some VOWs. Anyone who registers on a VOW may gain access to such automated valuations or comments and reviews about any property displayed on a VOW. Unless limited below, a VOW may display automated valuations or comments and reviews about this Property.
   ☐ **Seller** does not authorize an automated estimate of the market value of the listing (or a hyperlink to such estimate) to be displayed in immediate conjunction with the listing of this Property.
   ☐ **Seller** does not authorize third parties to write comments or reviews about the listing of the Property (or display a hyperlink to such comments or reviews) in immediate conjunction with the listing of this Property.

7. **Seller Obligations:** In consideration of **Broker's** obligations, **Seller** agrees to:
   (a) Cooperate with **Broker** in carrying out the purpose of this Agreement, including referring immediately to **Broker** all inquiries regarding the Property's transfer, whether by purchase or any other means of transfer.
   (b) Provide **Broker** with keys to the Property and make the Property available for **Broker** to show during reasonable times.
   (c) Inform **Broker** before leasing, mortgaging, or otherwise encumbering the Property.
   ~~(d) Indemnify **Broker** and hold **Broker** harmless from losses, damages, costs, and expenses of any nature, including attorney's fees, and from liability to any person, that **Broker** incurs because of (1) **Seller's** negligence, representations, misrepresentations, actions, or inactions, (2) the use of a lock box; (3) the existence of undisclosed material facts about the Property; or (4) a court or arbitration decision that a broker who was not compensated in connection with a transaction is entitled to compensation from **Broker**. This clause will survive **Broker's** performance and the transfer of title.~~
   (e) Perform any act reasonably necessary to comply with FIRPTA (Section 1445 of the Internal Revenue Code).
   (f) Make all legally required disclosures, including all facts that materially affect the Property's value and are not readily observable or known by the buyer. **Seller** certifies and represents that **Seller** knows of no such material facts (local government building code violations, unobservable defects, etc.) other than the following:
   _____
   **Seller** will immediately inform **Broker** of any material facts that arise after signing this Agreement.
   (g) Consult appropriate professionals for related legal, tax, property condition, environmental, foreign reporting requirements, and other specialized advice.

8. **Compensation: Seller** will compensate **Broker** as specified below for procuring a buyer who is ready, willing, and able to purchase the Property or any interest in the Property on the terms of this Agreement or on any other terms acceptable to **Seller**. **Seller** will pay **Broker** as follows (plus applicable sales tax):
   (a) \_\_\_\_6.0\_\_\_\_ % of the total purchase price ~~plus $_____ OR $_____~~, no later than the date of closing specified in the sales contract. However, closing is not a prerequisite for **Broker's** fee being earned.
   ~~(b) _____ ($ or %) of the consideration paid for an option, at the time an option is created. If the option is exercised, **Seller** will pay **Broker** the Paragraph 8(a) fee, less the amount **Broker** received under this subparagraph.~~

Seller (\_\_\_\_\_)(\_\_\_\_\_) and Broker/Sales Associate (*initials*)(\_\_\_\_\_) acknowledge receipt of a copy of this page, which is Page 2 of 4.
ERS-16tb   Rev 03/14                                                                                      © 2014 Florida Association of Realtors®

This software is licensed to [Cynthia Benchick - Charles Rutenberg Realty LLC] www.transactiondesk.com.

Exhibit "B"

105*  ~~(c) _____ ($ or %) of gross lease value as a leasing fee, on the date **Seller** enters into a lease or~~
106    ~~agreement to lease, whichever is earlier. This fee is not due if the Property is or becomes the subject of a~~
107    ~~contract granting an exclusive right to lease the Property.~~
108    ~~(d) **Broker's** fee is due in the following circumstances:  (1) If any interest in the Property is transferred, whether by~~
109    ~~sale, lease, exchange, governmental action, bankruptcy, or any other means of transfer, regardless of whether~~
110    ~~the buyer is secured by **Seller**, **Broker**, or any other person. (2) If **Seller** refuses or fails to sign an offer at the~~
111    ~~price and terms stated in this Agreement, defaults on an executed sales contract, or agrees with a buyer to~~
112*  ~~cancel an executed sales contract. (3) If, within _____ days after Termination Date ("Protection Period"),~~
113    ~~**Seller** transfers or contracts to transfer the Property or any interest in the Property to any prospects with whom~~
114    ~~**Seller**, **Broker**, or any real estate licensee communicated regarding the Property before Termination Date.~~
115    ~~However, no fee will be due **Broker** if the Property is relisted after Termination Date and sold through another~~
116    ~~broker.~~
117*  (e) **Retained Deposits:**  As consideration for **Broker's** services, **Broker** is entitled to receive _____% of all
118    deposits that **Seller** retains as liquidated damages for a buyer's default in a transaction, not to exceed the
119    Paragraph 8(a) fee.

120  **9. Cooperation with and Compensation to Other Brokers:  Notice to Seller:**  The buyer's broker, even if
121    compensated by **Seller** or **Broker**, may represent the interests of the buyer. **Broker's** office policy is to cooperate
122    with all other brokers except when not in **Seller's** best interest and to offer compensation in the amount of
123*   ☐  __3.0__% of the purchase price or $_____ to a single agent for the buyer;  ☐ __3.0__% of the
124*   purchase price or $_____ to a transaction broker for the buyer; and  ☐ _____% of the purchase
125*   price or $_____ to a broker who has no brokerage relationship with the buyer.
126*   ☐ None of the above. (If this is checked, the Property cannot be placed in the MLS.)

127  **10. Brokerage Relationship:  Broker** will act as a transaction broker. **Broker** will deal honestly and fairly; will account
128    for all funds; will use skill, care, and diligence in the transaction; will disclose all known facts that materially affect
129    the value of the residential property which are not readily observable to the buyer; will present all offers and
130    counteroffers in a timely manner unless directed otherwise in writing; and will have limited confidentiality with
131    **Seller** unless waived in writing.

132  **11. Conditional Termination:**  At **Seller's** request, **Broker** may agree to conditionally terminate this Agreement. If
133    **Broker** agrees to conditional termination, **Seller** must sign a withdrawal agreement, ~~reimburse **Broker** for all direct~~
134*  ~~expenses incurred in marketing the Property, and pay a cancellation fee of $_____ plus~~
135    ~~applicable sales tax. **Broker** may void the conditional termination, and **Seller** will pay the fee stated in Paragraph~~
136    ~~8(a) less the cancellation fee if **Seller** transfers or contracts to transfer the Property or any interest in the Property~~
137    ~~during the time period from the date of conditional termination to Termination Date and Protection Period, if~~
138    ~~applicable.~~

139  **12. Dispute Resolution:**  ~~This Agreement will be construed under Florida law. All controversies, claims, and other~~
140    ~~matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be~~
141    ~~settled by first attempting mediation under the rules of the American Mediation Association or other mediator~~
142    ~~agreed upon by the parties. If litigation arises out of this Agreement, the prevailing party will be entitled to recover~~
143    ~~reasonable attorney's fees and costs, unless the parties agree that disputes will be settled by arbitration as follows:~~
144*  ~~**Arbitration:**  By initialing in the space provided, **Seller** (____) (____), Sales Associate (____), and **Broker** (____)~~
145    ~~agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which~~
146    ~~the Property is located in accordance with the rules of the American Arbitration Association or other arbitrator~~
147    ~~agreed upon by the parties. Each party to any arbitration (or litigation to enforce the arbitration provision of this~~
148    ~~Agreement or an arbitration award) will pay its own fees, costs, and expenses, including attorney's fees, and will~~
149    ~~equally split the arbitrator's fees and administrative fees of arbitration.~~

150  **13. Miscellaneous:**  This Agreement is binding on **Seller's** and **Broker's** heirs, personal representatives,
151    administrators, successors, and assigns. **Broker** may assign this Agreement to another listing office. This
152    Agreement is the entire agreement between **Seller** and **Broker**. No prior or present agreements or representations
153    will be binding on **Seller** or **Broker** unless included in this Agreement. Electronic signatures are acceptable and
154    will be binding. Signatures, initials, and modifications communicated by facsimile will be considered as originals.
155    The term "buyer" as used in this Agreement includes buyers, tenants, exchangors, optionees, and other categories
156    of potential or actual transferees.

Seller (_____) (_____) and Broker/Sales Associate (_____) (_____) acknowledge receipt of a copy of this page, which is Page 3 of 4.
ERS-16tb   Rev 03/14                                                                                           © 2014 Florida Association of Realtors®
This software is licensed to [Cynthia Benchick - Charles Rutenberg Realty LLC] www.transactiondesk.com.      Instanet forms
Exhibit "B"

157* **14. Additional Terms:**

158

1. All Agreements, whether this listing or any other contracts, must be approved by the
159   United States Bankruptcy Court for the Southern District of Florida.

160   2. All disputes relating to this agreement or sale of the property shall be heard by the
   United States Bankruptcy Court for the Southern District of Florida.
161

162   3. Property is being sold "As-is, Where-is"

163

164

165

166

167

168

169

170* **Seller's Signature:** _[signed]_    Date: 05/30/2019

171* Home Telephone: _____  Work Telephone: _____  Facsimile: _____

172* Address: _____

173* Email Address: _____

174* **Seller's Signature:** _____    Date: _____

175* Home Telephone: _____  Work Telephone: _____  Facsimile: _____

176* Address: _____

177* Email Address: _____

178* **Authorized Sales Associate or Broker:** _[signed]_    Date: 05/30/2019

179* Brokerage Firm Name: Charles Rutenberg Realty, LLC    Telephone: 786-486-6387

180* Address: 2201 W. Prospect Road, Ft Lauderdale, FL 33309

181* Copy returned to **Seller** on _____ by ☐ email ☐ facsimile ☐ mail ☐ personal delivery.

The Florida Association of REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR®.is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

Seller (__/s/__) (____) and Broker/Sales Associate (__/s/__) (____) acknowledge receipt of a copy of this page, which is Page 4 of 4.
ERS-16tb    Rev 03/14                                                                                © 2014 Florida Association of Realtors®

This software is licensed to [Cynthia Benchick -  Charles Rutenberg Realty LLC] www.transactiondesk.com.

Exhibit "B"

